Case 8:23-cv-00606-JWH-KES   Document 1-1   Filed 04/05/23   Page 1 of 15   Page ID #:16
Electronically Filed by Superior Court of California, County of Orange, 02/17/2023 02:27:50 PM.
30-2023-01308682-CU-WT-CJC - ROA # 2 - DAVID H. YAMASAKI, Clerk of the Court By A. Gill, Deputy Clerk.



CUMMINS & WHITE, LLP
Erick J. Becker, P.C. (Bar No. 137180)
E-mail: ebecker@cwlawyers.com
Edward J. Farrell (Bar No. 261589)
E-mail: efarrell@cwlawyers.com
Hwui Lee (Bar No. 335331)
E-mail: hlee@cwlawyers.com
2424 S.E. Bristol Street, Suite 300
Newport Beach, CA 92660-0764
Telephone: (949) 852-1800
Facsimile: (949) 852-8510

Attorneys for Plaintiffs LEE EVANS and
NICOLA EVANS

# SUPERIOR COURT OF CALIFORNIA

## COUNTY OF ORANGE, CENTRAL JUSTICE CENTER

Assigned for All Purposes
Judge Nico Dourbetas

LEE EVANS and NICOLA EVANS,

    Plaintiffs,

    vs.

CARDLYTICS, INC., a Delaware
corporation; and DOES 1-20, inclusive,

    Defendants.

CASE NO.: 30-2023-01308682-CU-WT-CJC

COMPLAINT FOR:

**(1) BREACH OF CONTRACT**

**(2) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**(3) RETALIATION IN VIOLATION OF LABOR CODE SECTION 1102.5**

**(4) RETALIATION IN VIOLATION OF LABOR CODE SECTION 98.6**

**(5) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**

**(6) FAILURE TO PAY WAGES DUE UPON TERMINATION IN VIOLATION OF LABOR CODE SECTION 201 AND 202**

**(7) FAILURE TO REIMBURSE BUSINESS EXPENSES IN VIOLATION OF LABOR CODE SECTION 2802**

Plaintiffs LEE EVANS and NICOLA EVANS ("Plaintiffs") allege as follows:

-1-

COMPLAINT FOR DAMAGES

[W761.2|2431218.DOCX;1]

## GENERAL ALLEGATIONS

1. Plaintiffs are, and at all relevant times were, individuals residing in Orange County, California.

2. Plaintiffs allege, on information and belief, that CARDLYTICS, INC. ("Cardlytics") is, and at all relevant times was, a corporation organized and existing under the laws of the State of Delaware, and registered to conduct business and doing business in Orange County, California.

3. Plaintiffs allege, on information and belief, that DOES 1 to 25 are parties actually or potentially interested in matters related to the instant action. Plaintiffs do not know the true names or capacity of defendants sued herein as DOES 1 to 25, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this Complaint if and when said defendants' true names and capacities become known to Plaintiffs.

4. Jurisdiction is proper in this Court by virtue of the California statutes, decisional law and regulations, and the Local Rules of the Orange County Superior Court.

5. Venue is proper in this Court pursuant to California Code of Civil Procedure §395(a), because significant acts and omissions giving rise to the causes of action stated herein occurred or arose in the County of Orange, State of California.

## FACTS COMMON TO ALL CAUSES OF ACTION

6. Plaintiffs, a married couple, were both employed by Defendant Cardlytics. Lee Evans was the Chief Executive Officer (CEO) of a wholly owned subsidiary of Defendant, HSP-EPI Acquisitions, LLC (colloquially known by its brand name and hereafter as "Entertainment"), and Nicola Evans was the Chief Operating Officer (COO). Plaintiffs were previously owners and executives with Afin Technologies, Inc. ("Afin") (which owned the brand name "Entertainment" and HSP-EPI Acquisitions), which was purchased by Defendant Cardlytics in early 2022. As part of the purchase, Plaintiffs agreed to become employed by Cardlytics, commencing in January, 2022 and continuing in their roles as CEO and COO of the Entertainment division of the company. As part of the consideration for the purchase, both Plaintiffs agreed to continue their employment for at least the following four years.

COMPLAINT FOR DAMAGES

[W761.2|2431218.DOCX;1]

7.    While employed by Afin in April, 2020, Plaintiffs and the company entered into individual written employment agreements governing the terms of their employment for an initial term ending December 31, 2024. The employment agreements provided for a base salary, annual bonus, participation in health and retirement plans, and reimbursement of business expenses incurred.  The agreements also contained specific definitions of termination "with cause" by the company, and specified that "[t]he determination of whether the Executive's employment is terminable for cause shall be made solely by the Board, which shall act in good faith in making such determination.  The agreements further stated that any termination for reason other than "cause" would be considered "without cause."  In the event of a termination "without cause," Plaintiffs would be entitled to severance equal to twelve months' pay or the remaining salary owed had they remained employed until December 31, 2024, whichever was lesser.  A copy of the agreements signed by each Plaintiff are attached as Exhibit "A" to this Complaint.

8.    Plaintiffs' employment agreements provided that they were binding on successors, and Defendant expressly agreed to adopt and ratify the Afin employment contracts when it commenced employment of Plaintiffs.  In addition, Defendant offered Plaintiffs equity in the form of Restricted Stock Units ("RSUs") entitling Plaintiffs to a share in the profits of the company.  Some of the RSUs vested immediately upon the closing of the sale, while others were subject to a vesting schedule based on meeting performance metrics ("PSUs") or on a percentage basis upon each anniversary date of employment. The offer letters stated that if Plaintiffs' employment were terminated "without Cause," all RSUs would fully vest.  A copy of the offer letters provided to Plaintiffs are attached as Exhibit "B" to this Complaint.

9.    Plaintiffs are both highly regarded executives, having successfully operated Entertainment before the sale to Cardlytics, and continued to operate the division successfully after the acquisition.  During the year following the acquisition, Entertainment was the only division within Cardlytics that met its sales and growth targets.  Plaintiffs performed their duties admirably, with their full energy and attention, and were not advised by Cardlytics that their performance was anything less than exemplary.

[W761.2]2431218.DOCX;1]

10. During the process leading up to the closing of the sale of Entertainment, Defendant had full access to the financial, payroll and other records of Entertainment and conducted a thorough and exacting due diligence of all aspects of the business. As executives of Afin with a heavy work and travel schedule (the company originally operated in the UK but expanded into the United States, and the headquarters of Entertainment was in Michigan) and two small children, Plaintiffs decided in 2018 to have Afin hire a personal assistant to assist them with the household duties, freeing them to fully focus on running the company. Their personal assistant, Renata Alvarado, was named in the company organizational chart as "personal assistant," and was included in all payroll documents reviewed in the course of due diligence by Defendant. There was never any question raised by Defendant during the due diligence process regarding Alvarado's employment, and in fact, executives of Defendant were aware that Alvarado traveled with Plaintiffs and provided personal services to them. Following the closing of the purchase, Alvarado was retained as an employee by Cardlytics and continued performing the same tasks to assist Plaintiffs.

11. Plaintiffs regularly submitted expense reports to Defendant for business travel and other expenses incurred in the course of their employment. There were occasional errors made by Plaintiffs in the calculations and submission of receipts, which were corrected by their assistants or the Chief Financial Officer, Bob Marshall, without any disciplinary action or repercussions for Plaintiffs.

12. In September of 2022, Defendant named a new CEO, Karim Temsamani to replace the retiring CEO, Lynne Laube, who was CEO during the acquisition of Entertainment. Prior to Temsamani's official start date, Defendant's executives had been pressuring Lee Evans to reduce costs through a headcount reduction, including Nicola Evans. Nicola Evans was even sent an email by Laube on August 10, 2022 thanking her and wishing her well with her forced retirement. When Lee Evans met with Temsamani shortly after he became CEO, Temsamani told him it would be "inhuman" to force him to lay off his wife. Nevertheless, in November, 2022, Temsamani directed Lee Evans and Bob Marshall to cut costs by 10% through headcount reduction. Temsamani and other executives of Defendant were well aware that cuts at the

COMPLAINT FOR DAMAGES

[W761.2]2431218.DOCX;1]

1   requested level would necessitate layoff of Nicola Evans, and Lee Evans and Marshall reached
2   the same conclusion.    The decision to layoff Evans and two other employees was
3   communicated to Temsamani and other executives on November 17, with an expected final
4   date of employment for Nicola Evans on December 16. Neither Temsamani or any other
5   executive of Defendant responded at that time that Nicola Evans would not be laid off as
6   planned on the 16th.

7       13.    If Nicola Evans would have been laid off as planned, it would have been
8   considered a termination without cause and she would have been entitled to the severance
9   payment of one year salary, plus vesting of her RSUs.  She was also entitled to payment of her
10  earned annual bonus for 2022.   After her layoff date became official in November, she
11  contacted Defendant's Vice President, James Hart, to ask about payment of her annual bonus
12  upon her separation.  She was informed by Hart that she would not be paid the bonus upon
13  termination, but rather at the time bonuses are typically paid in 2023.   Nicola Evans responded
14  to Hart on December 9 that she believed withholding her bonus at termination was contrary to
15  California law, and that she had conferred with an attorney regarding her rights.  Lee Evans
16  emailed Temsamani on December 10 regarding this exchange between Hart and his wife, and
17  Temsamani replied that Cardlytics "would not proceed with terminating Nicola's employment,"
18  in contradiction to what had been openly acknowledged by him and other executives that she
19  would be separated from employment in December.

20      14.    On information and belief, Plaintiffs allege that after Temsamani was notified
21  that Nicola Evans would be laid off in response to his directive to reduce costs, Defendant
22  came to the realization that laying her off would result in a significant cost to the company due
23  to the severance and bonus she would be owed.  In addition, a layoff would result in vesting of
24  her unvested RSUs and she would be owed a significant sum to redeem all of her vested RSUs.
25  Finally, both Plaintiffs asserted Nicola's rights to all earned wages due and owing to her upon
26  her layoff, including her bonus, and put Defendant on notice that she would be pursuing legal
27  claims if she was not paid in accordance with California law.  For those reasons, Defendant
28  decided to concoct a reason to terminate both Plaintiffs and claim termination for "cause" to

COMPLAINT FOR DAMAGES

[W761.2|2431218.DOCX;1]

1   avoid its obligations under the agreements and offer letters and cover up its actual unlawful

2   reasons for terminating them.

3       15.    On December 17, 2022, Temsamani sent an email to Lee Evans professing to be

4   "shocked" to discover that the personal assistant was on the company payroll, and insisted that

5   she be terminated immediately, which was done. Lee Evans in response reminded Temsamani

6   that the employment of the assistant was not hidden but rather well known to executives at

7   Entertainment and Cardlytics both before and after the purchase.

8       16.    On January 26, 2023, Plaintiffs were summarily terminated from their positions

9   by phone call and letter from Temsamani. In the letter, Defendant asserted that Plaintiffs were

10  terminated for employing the personal assistant and "lying" about her function. In addition,

11  Defendant claimed Plaintiffs engaged in "fraud" in their expense reports. Specifically, Plaintiff

12  Nicola Evans was accused of submitting an expense for a meal in February 2022 while staying

13  in a hotel, when the meal was charged to the room and reimbursed with the rest of the hotel

14  bill. She was also accused of submitting a mobile phone bill for Lee Evans in June 2022 and

15  submitting the same bill in August. Lee Evans was accused of expensing a parking charge in

16  September 2022 and submitting it again in October. All of these expense errors were not

17  intentional, were not caught in review by either their assistant or the CFO that approved the

18  expenses, and were minor amounts. Defendant also accused Lee Evans of improperly

19  expensing a meal with Plaintiffs' personal attorneys. Finally, Defendant accused Plaintiffs of

20  fraudulently expensing the cost for purchase of new iphones in October, 2022, which were

21  business phones that Plaintiffs needed to replace their older model phones. The purchase was

22  cleared with Bob Marshall and Cardlytics HR and Finance personnel, and no issue was raised

23  at the time of purchase.

24      17.    Defendant's asserted reasons for the termination were entirely pretextual and

25  designed solely to facilitate Defendant's breach of its contractual commitments to Plaintiffs and

26  cover up the unlawful reasons for the termination. Defendant planned to layoff Nicola Evans

27  to cut costs until realizing it would require payment of severance and vesting of her RSUs, so it

28  cancelled the layoff and conspired to come up with reasons to terminate her that might qualify

-6-

COMPLAINT FOR DAMAGES

1   as "cause" under the agreement.  Defendant also resented her assertions that she was owed her

2   annual bonus at the time of her termination and her statement that would seek legal counsel to

3   vindicate her rights, and therefore Defendant sought to fabricate a reason to terminate her.

4   Likewise, Lee Evans complained about the Defendant's refusal to pay the bonus upon her

5   termination, and Defendant sought to terminate him in retaliation and fabricated reasons to

6   avoid meeting its contractual obligations.

7         18.   Defendant has refused and continues to refuse to pay Plaintiffs the severance

8   they are owed under their respective agreements.  Defendant failed to pay Plaintiffs their

9   earned annual bonuses for 2022 upon termination, and have failed to reimburse Plaintiffs for

10   business expenses they incurred and submitted for reimbursement.   Defendant notified

11   Plaintiffs that it considers their RSUs, whether vested or not, as voided due to their supposed

12   termination for "cause."  By these acts and omissions, Defendant has breached the agreements

13   with Plaintiffs, failed to act in good faith and deal fairly with Plaintiffs, and has wrongfully

14   terminated both of them.

15                        **FIRST CAUSE OF ACTION**

16      **(For Breach of Contract by Plaintiffs against Defendant and Does 1-20)**

17         19.   Plaintiffs reallege and incorporate by reference the allegations contained in

18   Paragraphs 1-18 inclusive as though fully set forth herein.

19         20.   Plaintiffs (individually) and Defendant entered into a written employment

20   agreement with an initial term ending December 31, 2024, whereby Defendant agreed to pay

21   Plaintiffs their regular salary, performance bonuses and certain benefits throughout the term

22   unless Plaintiffs or Defendant terminated the contract.  The agreement further stipulated that if

23   Plaintiffs were terminated without "cause" before the end of the contract term, Defendant

24   would pay Plaintiffs the lesser of twelve (12) months of their salary or their remaining salary

25   through December 31, 2024 as severance pay.  Plaintiffs (individually) and Defendant also

26   entered into a written agreement whereby Defendant granted Plaintiffs certain restricted stock

27   units (RSUs) which would vest over a four year period and would be eligible for redemption

28   and a cash payment on a future date, provided that Plaintiffs did not voluntarily separate from

COMPLAINT FOR DAMAGES

[W761.2|2431218.DOCX;1]

1 employment without cause or be terminated for cause.

2      21.     Plaintiffs performed all of their obligations under all of the agreements

3 governing their employment.  Defendant, without cause as defined in the employment

4 agreements and RSU agreements, terminated Plaintiffs' employment on January 26, 2023.

5      22.     Defendant breached the employment agreements by failing to perform its

6 obligations under the agreements to pay Plaintiffs the required severance pay after terminating

7 them without cause, and failing to pay Plaintiffs their earned performance bonuses for 2022.

8 Defendant further breached the terms of the RSU agreements by terminating them without

9 cause and declaring that all of Plaintiffs vested and unvested restricted stock units were

10 forfeited, without paying Plaintiffs any sum whatsoever for the value of their restricted stock

11 units.  Defendant's breach of the contractual terms in all the agreements has not been remedied.

12      23.     Plaintiffs have suffered damages as a result of Defendant's breaches of the

13 various agreements, including loss of severance pay, loss of their earned performance bonus for

14 2022, and loss of the value of their vested and unvested RSUs.  In addition, Plaintiffs suffered

15 damages in lost wages and benefits for the term of the employment agreements through

16 December 31, 2024.

17                          **SECOND CAUSE OF ACTION**

18          **(For Breach of the Implied Covenant of Good Faith and Fair Dealing**

19                  **by Plaintiffs against Defendant and Does 1-20)**

20      24.     Plaintiffs reallege and incorporate by reference the allegations contained in

21 Paragraphs 1-23 inclusive as though fully set forth herein.

22      25.     Plaintiffs (each individually) and Defendant were parties to a written contract

23 setting forth the terms of their employment with Defendant.  Plaintiffs (each individually) were

24 also parties to a written agreement with respect to restricted stock units (RSUs) granted by

25 Defendant to Plaintiffs in connection with their employment.

26      26.     In every contract or agreement there is an implied promise of good faith and fair

27 dealing, meaning that each party will not do anything to unfairly interfere with the right of any

28 other party to receive the benefits of the contract.  Good faith means honesty of purpose

COMPLAINT FOR DAMAGES

[W761.2|2431218.DOCX;l]

1 | without any intention to mislead or take unfair advantage of another.

2 |     27.    Plaintiffs performed all of their obligations under the employment and RSU
3 | agreements.  Defendant, without cause as defined in the employment and RSU agreements,
4 | terminated Plaintiffs' employment on January 26, 2023 and declared that their vested and
5 | unvested restricted stock units were forfeited.

6 |     28.    Defendant did not have good cause to terminate the agreements and Plaintiffs'
7 | employment.  Defendant's alleged reasons for the terminations were pretextual and fabricated
8 | to cover up the real reason for the terminations, which was to deny Plaintiffs the benefits of
9 | their contracts, consisting of the wages, severance, bonuses and value of the RSUs required
10 | under the agreements.

11 |     29.    By terminating the agreements on the false pretense that it had "cause" to
12 | terminate under the agreements, so as to deny Plaintiffs the benefits of their contracts,
13 | Defendant did not act fairly and in good faith.

14 |     30.    Plaintiffs have suffered damages as a result of Defendant's breach of the
15 | covenant of good faith and fair dealing in an amount to be determined at trial according to
16 | proof.

17 | **THIRD CAUSE OF ACTION**

18 | **(For Retaliation in Violation of Labor Code Section 1102.5**

19 | **by Plaintiffs against Defendant and Does 1-20)**

20 |     31.    Plaintiffs reallege and incorporate by reference the allegations contained in
21 | Paragraphs 1-30 inclusive as though fully set forth herein.

22 |     32.    At all relevant times, Labor Code §1102.5 was binding on Defendant and
23 | obligated Defendant to refrain from taking any adverse action against employees for reporting
24 | or complaining about what they reasonably believed to be violations of the law.

25 |     33.    Plaintiffs engaged in protected activity within the meaning of Labor Code
26 | §1102.5 by communicating to executives of Defendant, including Temsamani and Hart, that
27 | Nicola Evans should be paid her earned annual performance bonus for 2022 upon being laid off
28 | from the company, and that withholding payment of the bonus would be a violation of

[W761.2|2431218.DOCX;1]

1  California law. Plaintiffs also communicated to Defendant that they would pursue legal claims

2  against Defendant if the bonus payment was withheld.

3      34.    In response to Plaintiffs' protected activity, Defendant retaliated against them by

4  subjecting them to adverse employment actions, including termination of employment,

5  termination of their employment agreements, and termination of their RSU rights.

6      35.    As a proximate result of Defendant's willful, knowing, and intentional violations

7  of Labor Code §1102.5, Plaintiffs have suffered and will continue to suffer humiliation,

8  emotional distress, and mental and physical pain and anguish, all to their damage in a sum

9  according to proof.

10     36.    As a result of Defendant's adverse employment actions against Plaintiffs, they

11 have suffered and continue to suffer losses in earnings and other benefits, and will for a period

12 of time in the future be unable to obtain gainful employment as their ability to obtain such

13 employment and earning capacity have been diminished. The exact amount of such expenses

14 and losses is presently unknown and Plaintiffs will pray leave of the court to show the total

15 amount of lost earnings and benefits according to proof at the time of trial.

16     37.    Plaintiffs are informed and believe, and thereon allege that the employees,

17 officers, directors, and/or managing agents of Defendant acted with malice and oppression, as

18 their unlawful acts were carried out with full knowledge of the extreme risk of injury to

19 Plaintiffs, and with willful and conscious disregard for Plaintiffs' rights. They also acted

20 fraudulently, as they willfully concealed the fact that Plaintiffs' rights were being violated, with

21 the intent to deprive Plaintiffs of their valuable employment benefits. Accordingly, an award

22 of punitive damages is warranted.

23     38.    Plaintiffs are informed and believe and thereon allege that the actions of

24 Defendant's employees, officers, directors and/or managing agents were undertaken with the

25 prior approval, consent, and authorization of Defendant and were subsequently authorized and

26 ratified by it as well as by and through its officers, directors, and/or managing agents.

27 / / /

28 / / /

COMPLAINT FOR DAMAGES

[W761.2]2431218.DOCX;1]

## FOURTH CAUSE OF ACTION

### (For Retaliation in Violation of Labor Code Section 98.6
### by Plaintiffs against Defendant and Does 1-20)

39.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1-38 inclusive as though fully set forth herein.

40.     At all relevant times, Labor Code §98.6 was binding on Defendant and obligated Defendant to refrain from taking any adverse action against employees for, among other things, exercising their rights under the Labor Code or making an oral or written complaint that they are owed unpaid wages.

41.     Plaintiffs engaged in protected activity within the meaning of Labor Code §98.6 by communicating to executives of Defendant, including Temsamani and Hart, that Nicola Evans was owed her earned annual performance bonus for 2022 immediately upon being laid off from the company, and that withholding payment of the bonus would be a violation of California law.  Plaintiffs also communicated to Defendant that they would pursue legal claims against Defendant if the bonus payment was withheld.

42.     In response to Plaintiffs' protected activity, Defendant retaliated against them by subjecting them to adverse employment actions, including termination of employment, termination of their employment agreements, and termination of their RSU rights.

43.     As a proximate result of Defendant's willful, knowing, and intentional violations of Labor Code §98.6, Plaintiffs have suffered and will continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

44.     As a result of Defendant's adverse employment actions against Plaintiffs, they suffered and continue to suffer losses in earnings and other benefits, and will for a period of time in the future be unable to obtain gainful employment as their ability to obtain such employment and earning capacity have been diminished. The exact amount of such expenses and losses is presently unknown and Plaintiffs will pray leave of the court to show the total amount of lost earnings and benefits according to proof at the time of trial.

-11-
COMPLAINT FOR DAMAGES

[W761.2]2431218.DOCX;1]

45.     Plaintiffs are informed and believe, and thereon allege that the employees, officers, directors, and/or managing agents of Defendant acted with malice and oppression, as their unlawful acts were carried out with full knowledge of the extreme risk of injury to Plaintiffs, and with willful and conscious disregard for Plaintiffs' rights.  They also acted fraudulently, as they willfully concealed the fact that Plaintiffs' rights were being violated, with the intent to deprive Plaintiffs of their valuable employment benefits.  Accordingly, an award of punitive damages is warranted.

46.     Plaintiffs are informed and believe and thereon allege that the actions of Defendant's employees, officers, directors and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendant and were subsequently authorized and ratified by it as well as by and through its officers, directors, and/or managing agents.

## FIFTH CAUSE OF ACTION

### (For Wrongful Termination in Violation of Public Policy
### by Plaintiffs against Defendant and Does 1-20)

47.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1-46 inclusive as though fully set forth herein.

48.     Labor Code §1102.5 requires that employers refrain from retaliating by taking an adverse employment action against any employee that makes a report or complaint about what he or she believes to be unlawful conduct in the workplace to a company representative or government agency.

49.     Labor Code §98.6 requires that employers refrain from taking any adverse employment action against any employee for, among other things, exercising their rights under the Labor Code or making an oral or written complaint that they are owed unpaid wages.

50.     Defendant terminated Plaintiffs in retaliation for their exercise of their rights under Labor Code §1102.5 and Labor Code §98.6.

51.     Defendant engaged in conduct that taken as a whole, materially and adversely affected the terms and conditions of Plaintiffs' employment by terminating them because of their protected activity.

-12-

[W761.2|2431218.DOCX;1]

52.    As a proximate result of Defendant's willful, knowing, and intentional wrongful termination of Plaintiffs, Plaintiffs have suffered and will continue to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to their damage in a sum according to proof.

53.    As a result of Defendant's wrongful termination of Plaintiffs, they have suffered and continue to suffer losses in earnings and other benefits, and will for a period of time in the future be unable to obtain gainful employment as their ability to obtain such employment and earning capacity have been diminished. The exact amount of such expenses and losses is presently unknown and Plaintiffs will pray leave of the court to show the total amount of lost earnings and benefits according to proof at the time of trial.

54.    Plaintiffs are informed and believe, and thereon allege that the employees, officers, directors, and/or managing agents of Defendant acted with malice and oppression, as their wrongful acts were carried out with full knowledge of the extreme risk of injury to Plaintiffs, and with willful and conscious disregard for Plaintiffs' rights.  They also acted fraudulently, as they willfully concealed the fact that Plaintiffs' rights were being violated, with the intent to deprive Plaintiffs of their valuable employment benefits.  Accordingly, an award of punitive damages is warranted.

55.    Plaintiffs are informed and believe and thereon allege that the actions of Defendant's employees, officers, directors and/or managing agents were undertaken with the prior approval, consent, and authorization of Defendant and were subsequently authorized and ratified by it as well as by and through its officers, directors, and/or managing agents.

## SIXTH CAUSE OF ACTION

### (For Failure to Pay Wages Earned Upon Termination in Violation of Labor Code Section 201 and 202 by Plaintiffs against Defendant and Does 1-20)

56.    Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1-55 inclusive as though fully set forth herein.

57.    Labor Code Sections 201 and 202 require that employees be paid all earned wages immediately upon termination.

-13-

[W761.2|2431218.DOCX;1]

1    58.    Plaintiffs earned performance bonus for their efforts in calendar year 2022, as set

2    forth in their employment agreements and company bonus plan.  Such bonuses were earned at

3    the conclusion of calendar year 2022, and were therefore earned wages that were required to be

4    paid upon termination.

5    59.    When Plaintiffs were terminated on January 26, 2023, they were not paid their

6    earned performance bonus for calendar year 2022.  To date, Plaintiffs have not been paid their

7    earned bonus, in violation of Labor Code §§ 201 and 202.  Defendant's failure to pay Plaintiffs

8    was willful within the meaning of Labor Code §203.

9    60.    Defendant is obligated to pay Plaintiffs their earned bonus for calendar year

10   2022, in an amount to be determined according to proof at trial.

11   61.    Defendant's willful failure to pay all earned wages at the time of termination in

12   violation of Labor Code §§ 201 and 202 entitles Plaintiffs to recovery of waiting time penalties

13   under Labor Code §203 in an amount equal to their regular salary for up to thirty (30) days.

14                               **SEVENTH CAUSE OF ACTION**

15   **(Failure to Reimburse Business Expenses in Violation of Labor Code Section 2802)**

16   62.    Plaintiffs reallege and incorporate by reference the allegations contained in

17   Paragraphs 1-61 inclusive as though fully set forth herein.

18   63.    Labor Code §2802 requires an employer to reimburse all necessary expenses

19   incurred by employees in the course and scope of their duties.

20   64.    Plaintiffs incurred necessary business expenses, including travel expenses, in the

21   course of performing their duties for Defendant in the period prior to their termination.

22   Plaintiffs have submitted all required receipts and paperwork to Defendant in order to receive

23   reimbursement for these expenses.

24   65.    As of the date of their termination, and continuing to date, Defendant has not

25   reimbursed Plaintiffs for their expenses incurred, in violation of Labor Code §2802.

26   66.    Defendant is obligated to pay Plaintiffs for their expenses incurred, in an amount

27   according to proof at trial.

28

COMPLAINT FOR DAMAGES

[W761.2|2431218.DOCX;1]

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs seek judgment against Defendants, and each of them, in an amount according to proof, as follows:

1.    For a money judgment representing contractual damages, including lost wages, lost bonuses lost severance pay, and lost value of restricted stock units, all according to proof, together with interest on these amounts;

2.    For a money judgment representing compensatory damages, including lost current and future wages, loss of earning capacity, loss of employee benefits, bonuses, value of restricted stock units, pain, suffering and emotional distress, and all other sums of money, together with interest on these amounts; for other special damages; and for general damages for future medical expenses for treatment for emotional distress, all according to proof;

3.    For exemplary and punitive damages in an amount sufficient to punish Defendants for their wrongful conduct alleged herein and to deter such conduct in the future;

4.    For attorneys' fees and cost of suit pursuant to the employment agreements and statutory authority;

5.    For pre and post-judgment interest;

6.    For injunctive relief;

7.    For declaratory relief that Defendants' unlawful conduct as pled herein was a violation of Plaintiffs' rights; and

8.    For such other and further relief that the Court deems just and proper.

Dated: February 17, 2023        CUMMINS & WHITE, LLP

By: _____
Erick J. Becker, P.C.
Edward J. Farrell
Hwui Lee
Attorneys for Plaintiffs LEE EVANS and
NICOLA EVANS

-15-
COMPLAINT FOR DAMAGES

[W761.2|2431218.DOCX;1]