ALDEN J. PARKER (SBN 196808)
aparker@fisherphillips.com
FISHER & PHILLIPS LLP
621 Capitol Mall, Suite 1400
Sacramento, California 95814
Telephone: (916) 210-0400
Facsimile: (916) 210-0401

BRIAN L. TREMER (SBN 335904)
btremer@fisherphillips.com
FISHER & PHILLIPS LLP
2050 Main Street, Suite 1000
Irvine, California 92614
Telephone: (949) 851-2424
Facsimile: (949) 851-0152

Attorneys for Defendant
CARDLYTICS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE EVANS and NICOLA EVANS,<br><br>    Plaintiffs,<br><br>    v.<br><br>CARDLYTICS, INC. a Delaware corporation; and DOES 1-20, inclusive,<br><br>    Defendants.<br><br>AND RELATED COUNTERCLAIMS | Case No: 8:23-cv-00606-JWH-(KESx)<br><br>[*Originally Orange County Superior Court Case No. 30-2023-01308682*]<br><br>**DEFENDANT CARDLYTICS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>[*Filed concurrently with the Declaration of Nick Lynton*]<br><br>**DATE:     June 2, 2023**<br>**TIME:     9:00 a.m.**<br>**DEPT:     Courtroom 9D**<br><br>Complaint Filed:  February 17, 2023<br>Removal Filed:    April 5, 2023<br>Trial Date:       Not Set |

# Table of Contents

I. INTRODUCTION ...................................................................................................1

II. THIS COURT HAS ORIGINAL JURISDICTION OVER THIS ACTION BECAUSE THE PARTIES ARE DIVERSE OF CITIZENSHIP ......................2

   A. Cardlytics Has Demonstrated Complete Diversity Pursuant To The Removal Standard .........................................................................................2

      1. Cardlytics' Notice of Removal Only Required A Short Plain Statement..................................................................................3

      2. Cardlytics Submits Competent Evidence To Support Removal.....3

   B. There Is Complete Diversity Among The Parties .....................................4

      1. Cardlytics' Principal Place Of Business Is Atlanta ........................6

      2. Plaintiffs' Conclusory and Self-Serving Arguments Do Not Support A Contrary Result..............................................................8

III. PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES MUST BE DENIED BECAUSE THERE IS COMPLETE DIVERSITY AND CARDLYTICS' REMOVAL WAS OBJECTIVELY REASONABLE...........11

VI. CONCLUSION.................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*3123 SMB LLC v. Horn*,
   880 F.3d 461 (9th Cir. 2018) .................................................................................6

*Cail v. Joe Ryan Enters., Inc.*,
   65 F. Supp. 3d 1288 (M.D. Ala 2014) ...................................................................7

*China Basin Properties, Ltd. v. One Pass, Inc.*,
   812 F.Supp. 1038 (N.D. Cal. Feb. 8, 1993) .........................................................11

*Concept Chaser Co., Inc. v. Pentel of Am. Ltd.*,
   2011 WL 4964963 (C.D. Cal. Oct. 18, 2011) .....................................................13

*Dart Cherokee Basin Operating Co. v. Owens*,
   135 S. Ct. 547 (2014) ......................................................................................5, 14

*Donegan v. The Toro Co.*,
   No. EP-22-CV-00332-DCG (W.D. Tex. Nov. 30, 2022) ..................................7, 8

*Fritsch v. Swift Transp. Co. of Ariz., LLC*,
   899 F.3d 785 (9th Cir. 2018) .................................................................................5

*Gaus v. Miles, Inc.*,
   980 F.2d 564 (9th Cir. 1992) .................................................................................4

*Gentry v. Sikorsky Aircraft Corp.*,
   383 F. Supp. 3d 442 (E.D. Pa. 2019) .....................................................................7

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   No. 09MD2087-BTM(AJB), 2010 WL 2998855 (S.D. Cal. July 29,
   2010) ...................................................................................................................12

*Indus. Tectronics, Inc. v. Aero Alloy*,
   912 F.2d 1090 (9th Cir. 1990) ......................................................................6, 7, 8

*L'Garde, Inc. v. Raytheon Space and Airborne Systems*,
   805 F. Supp. 2d 932 ............................................................................................12

*Lussier v. Dollar Tree Stores, Inc.*,
   518 F.3d 1062 (9th Cir. 2008) .............................................................................13

*Martin v. Franklin Capital Corp.*,
    546 U.S. 132 (2005)..................................................................................13, 14

*McNutt v. General Motors Acceptance Corp. of Indiana*,
    298 U.S. 178 (1936)....................................................................................4, 5

*Prado v. Dart Container Corp. of Cal.*,
    373 F. Supp. D 1281, 1285 (N.D. Cal. 2019).................................................13

*Rhodes v. Barnett*,
    692 Fed. Appx. 834 (9th Cir. 2017)...............................................................14

*Sisson v. Ruby*,
    497 U.S. 358 (1990)........................................................................................6

*Starr Indem. & Liab. Co. v. Rolls-Royce Corp.*,
    725 F. App'x 592 (9th Cir. 2018)....................................................................7

*State Farm Fire & Cas. Co. v. Byrd*,
    710 F. Supp. 1292 (N.D. Cal. 1989)...............................................................7

*Valdes v. Wal–Mart Stores, Inc.*,
    199 F.3d 290 (C.A.5 2000)...........................................................................14

**Federal Statutes**

15 U.S.C. §78p.......................................................................................................8

28 U.S.C. §1332....................................................................................................4

28 U.S.C. §1332(a) ............................................................................................4, 5

28 U.S.C. § 1332(c)(1)..........................................................................................6

28 U.S.C. § 1441...................................................................................................4

28 U.S.C. § 1446(a) ..............................................................................................5

28 U.S.C. § 1447(c) .........................................................................................4, 13

Securities Exchange Act of 1934.........................................................................8

**Regulations**

Notice of Removal, Dkt. #1, ¶¶ 13,14 .................................................................5

## I. INTRODUCTION

Defendant Cardlytics, Inc. ("Cardlytics" or "Defendant") submits this Opposition in response to Plaintiffs Lee Evans' and Nicola Evans' (collectively "Plaintiffs") Motion to Remand.

Plaintiffs are former employees of Cardlytics and citizens of California. Cardlytics is a citizen of Delaware, where it was incorporated, and its corporate headquarters are in Atlanta, Georgia, where its high level corporate policy and decision-making emanate. Pursuant to the firmly established 'nerve center' test for diversity jurisdiction, Cardlytics is therefore also a citizen of Georgia.

Plaintiffs purport to argue that Cardlytics has abandoned its headquarters in Atlanta in favor of California, but the record does not support that position. Plaintiffs point to Cardlytics' business dealings in California, and expansion of local offices here. However, Cardlytics – not unlike many modern companies – conducts business and has offices nationally and internationally. The expansion of business activity does not alter Cardlytics' principal place of business. Plaintiffs therefore conflate the old – and now denounced – analysis related to business activity in various states, with the current "nerve center" test that requires the finding of only a single principal place of business (typically corporate headquarters) regardless of multistate business conduct.

Cardlytics is **not** a citizen of California. Cardlytics does business in California and its CEO is located in California. However, most of its other chief executive officers are based out of Atlanta, and its core executive and administrative functions, and heads of these groups (legal operation, financial operations, accounting, human resources) are all based out of Atlanta. Applying the appropriate standard, Cardlytics has more than adequately demonstrated original jurisdiction and a proper basis for removal.

Finally, Plaintiffs' request for attorneys' fees should be denied because Cardlytics' removal was proper. However, even if the Court determines that diversity jurisdiction does not exist, Plaintiffs nonetheless are not entitled to attorneys' fees because there is no indication that Cardlytics removed this matter in bad faith or in clear contradiction to

1
DEFENDANT CARDLYTICS, INC'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
FP 47138472.1

settled law. To the contrary, Cardlytics removed this case based on its intimate knowledge of its own corporate structure, and the significant amount of evidence illustrating that its principal place of business is Atlanta. Because Cardlytics removed this case in good faith and relied on legitimate evidence in support of removal, the Court should deny Plaintiffs' request for attorneys' fees.

In short, complete diversity exists between the parties in this lawsuit, and the Court therefore retains original jurisdiction. Plaintiffs' Motion to Remand should be denied accordingly.

## II. THIS COURT HAS ORIGINAL JURISDICTION OVER THIS ACTION BECAUSE THE PARTIES ARE DIVERSE OF CITIZENSHIP

### A. Cardlytics Has Demonstrated Complete Diversity Pursuant To The Removal Standard

Diversity jurisdiction exists where the parties are diverse of citizenship and the amount in controversy exceeds the sum or value of $75,000.00. 28 U.S.C. §1332(a). A defendant may remove a civil action from state court to federal court if original jurisdiction exists at the time the complaint and notice of removal was filed (i.e., the first instance). 28 U.S.C. § 1441. Strictly construing removal statutes, the Court may remand a case to state court for lack of subject matter jurisdiction or defects in removal procedure. 28 U.S.C. § 1447(c). In the first instance, there is a presumption against removal, and courts can challenge the removal if there are doubts to original jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992).[1] However, the presumption against removal simply means that that the party seeking to invoke federal jurisdiction under 28 U.S.C. §1332 [diversity of citizenship] bears the burden of demonstrating that grounds

---

[1] Contrary to Plaintiff's assertions in their opening brief, the court in *Gaus* – focusing on amount in controversy – did not state there was any particular skepticism of removals. Rather, the court simply highlighted a distinction between the standard to analyze diversity jurisdiction for claims filed in federal court (legal certainty of insufficient amount in controversy) compared to the presumption requiring preponderance of evidence for removal actions.

for diversity exist. *Id.*; *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). In the notice of removal, the petitioning defendant can sufficiently demonstrate the grounds for federal jurisdiction in a simple pleading. *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). If the claim to jurisdiction in the notice of removal is still in question, the petitioning defendant need only submit competent evidence to quell any doubts of jurisdiction. *Id.*; *McNutt*, 298 U.S. at 189. Ultimately, defendants are entitled to be in federal court when original jurisdiction exists, regardless of the avenue of invocation. *See* 28 U.S.C. §1332(a).

### 1. *Cardlytics' Notice of Removal Only Required A Short Plain Statement*

A notice of removal requires a short and plain statement of the grounds for removal. 28 U.S.C. § 1446(a). The notice of removal is only required to include plausible allegations of the jurisdictional requirements, not uncontroverted evidence. Evidence is only required if the plaintiff or the court challenges the defendant's jurisdictional allegations. *Dart Cherokee Basin Operating Co.,* 135 S. Ct. at 554; *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 788 (9th Cir. 2018).

Cardlytics' Notice of Removal (Docket Entry ("Dkt.") #1), contains the necessary short plain statement to plausibly plead original jurisdiction via diversity. More specifically, Cardlytics pleads its state of incorporation (Delaware), and its principal place of business as one and the same with the location of corporate headquarters (Atlanta, Georgia) – both of which are diverse from Plaintiffs' home state of California. (*See* Notice of Removal, Dkt. #1, ¶¶ 13,14)(pleading that its corporate headquarters in Atlanta, Georgia is the "nerve center" where high-level officers direct, control, and coordinate its activities.)

### 2. *Cardlytics Submits Competent Evidence To Support Removal*

A defendant can support its removal with "competent proof" and must only meet a preponderance of the evidence standard. *Dart Cherokee Basin Operating Co.,* 135 S. Ct. at 554; *McNutt*, 298 U.S. at 189. As discussed throughout this Opposition, Cardlytics submits more than competent proof that its principal place of business is Atlanta, where

its corporate headquarters is located, and key executive and administrative functions emanate. (*See generally*, Declaration of Nick Lynton In Support of Cardlytics' Opposition ("Lynton Decl.")(Declaration of Cardlytics' Chief Legal and Privacy Officer and Corporate Secretary, one of its three key chief executives, describing all of the executive and core administrative decision making in Atlanta).

## B. There Is Complete Diversity Among The Parties

For the purposes of diversity jurisdiction, a corporation is a citizen of both its state of incorporation, and the state where it has its "principal place of business."[2] 28 U.S.C. § 1332(c)(1). In *Hertz Corp. v. Friend*, The United States Supreme Court established the definitive test to determine a corporation's *principal place of business* as the location of its "nerve center." 559 U.S. 77, 97 (2010). The "nerve center" analysis focuses on the place at which the corporation's executive and administrative functions are conducted. *Id.* The court must consider factors such as where the corporation "conducts, coordinates, or directs corporate activities," and where "corporate officers make significant decisions and set policy." *Id.*; *See also*, *3123 SMB LLC v. Horn*, 880 F.3d 461, 465 (9th Cir. 2018); *Indus. Tectronics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092–93 (9th Cir. 1990).

Notably, the *Hertz* Court explicitly rejected the Ninth Circuit's application of a "plurality of each relevant business activities" test, and the general "business activities" test - measuring the total amount of business activities that the corporation conducts in a location, and determining whether it is "significantly larger" than a different location. The purpose of the nerve center test is to promote greater predictability, and further the administrative simplicity which is the virtue of the jurisdictional statute. *See Sisson v. Ruby,* 497 U.S. 358, 375 (1990). Thus, the "nerve center" test renders irrelevant places in which the corporation conducts significant business - which of course can be many

---

[2] Plaintiffs do not appear to contest that Cardlytics was incorporated in Delaware, and it is thus a citizen there for diversity purposes. Such a challenge would be erroneous, but notwithstanding, Cardlytics directs the Court to: i) Notice of Removal (Dkt. 1) at ¶ 14; Plaintiffs' Complaint (Declaration of Alden J. Parker (Dkt. 4)) at ¶ 4; Lynton Decl. at ¶ 6.

states - and/or the location of telecommuting employees. Indeed, in modern business, if significant business and/or the location of telecommuting employees were sufficient to establish jurisdiction, we would have an unworkable test leading to inconsistent results. *See Hertz*, 559 U.S. at 97 (The Supreme Court recognizing that it may be hard to analyze a corporate center in the era of telecommuting, internet meetings, and division of command in various locations); *see also*, *Starr Indem. & Liab. Co. v. Rolls-Royce Corp.*, 725 F. App'x 592, 593–94 (9th Cir. 2018) (The court held that the location of an office that supports the most visible aspect of the corporation's activities does not alter the location of the corporation's nerve center which was one and the same with its corporate headquarters, and where top officers were making decisions).

      Since administrative simplicity is critical to the application of a jurisdictional statute, a corporation's principal place of business and "nerve center" is limited to ***one*** location. *See Id.* ("The word "principal" requires us to pick out the "main, prominent" or "leading" place); *Gentry v. Sikorsky Aircraft Corp.*, 383 F. Supp. 3d 442 (E.D. Pa. 2019)(the court notes that the "nerve center" is "static"); *Cail v. Joe Ryan Enters., Inc.*, 65 F. Supp. 3d 1288 (M.D. Ala 2014)(the court notes that it generally points courts "in a single direction, towards the center of overall direction, control, and coordination."). The sole "nerve center" is typically the location of the corporate headquarters. *See Indus. Tectronics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092–93 (9th Cir. 1990); *see also State Farm Fire & Cas. Co. v. Byrd*, 710 F. Supp. 1292, 1293 (N.D. Cal. 1989) (determining "nerve center" by examining, among other factors, where the corporation's headquarters are located and where its principal policy and executive decisions are made); *Donegan v. The Toro Co.*, No. EP-22-CV-00332-DCG (W.D. Tex. Nov. 30, 2022) citing *Hertz*, 559 U.S. at 93 ("[A] corporation's nerve center is presumptively the place it maintains its headquarters." The court also noted that there are only "rare circumstances" that the corporation's headquarters will not be its nerve center.) These rare circumstances are of course where the headquarters is not actually the center location of corporate direction, coordination and control. *Hertz*, 559 U.S. at 93. For example, if a corporation simply

identifies a headquarters for use as a mailing address, but no actual business is conducted in that location, it would be insufficient because such situations would readily permit jurisdictional manipulation. *See Id.* (If the record reveals attempts at manipulation—for example, that the alleged "nerve center" is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the courts should instead take as the "nerve center" the place of actual direction, control, and coordination; court also noting that a corporation's identification of its headquarters on an SEC Form 10-k alone is not dispositive to show "nerve center" since it could lead to manipulation of jurisdiction).

### 1.   *Cardlytics' Principal Place Of Business Is Atlanta*

Cardlytics' principal place of business is undoubtedly the location of its longstanding corporate headquarters in Atlanta, Georgia. (Lynton Decl., ¶ 7); *See Indus. Tectronics, Inc.*, 912 F.2d at 1092–93. Two-thirds of Cardlytics' top corporate officers, and those designated for purposes of Section 16 disclosures[3] – the Chief Financial Officer (CFO), and Chief Legal and Compliance Officer (CLO) and Corporate Secretary – are based out of the Atlanta headquarters. (Lynton Decl., ¶¶ 3,9,10,11,12).  The Chief Executive Officer is the third Section 16 officer, and while he currently resides in, and is based in California, he is the only Section 16 officer that is not in Atlanta, where Cardlytics' high level decisions are made. (Lynton Decl., ¶ 11).[4] Indeed, Cardlytics' core executive operating and administrative functions – financial operations, accounting, legal

---

[3] Section 16 refers to a rule within the Securities Exchange Act of 1934 that articulates the regulatory filing responsibilities that directors, officers, and principal stockholders are legally required to adhere to. 15 U.S.C. §78p. Section 16 also imposes filing standards for "insiders" defined as "any officers, directors, or stockholders who possess stock that directly or indirectly results in beneficial ownership of more than 10% of the company's common stock or other class of equity.

[4] To be clear, Cardlytics in no way seeks to misconstrue the fact that its current Chief Executive Officer, Karim Temsamani, resides in, and is based out of California.

operations, and human resources – are based out of the Atlanta headquarters, where the heads of each of these groups reside, each of whom have executive and leadership functions. (Lynton Decl. ¶¶ 15-18). Further, and more specifically:

- Cardlytics' former, and new head, of Human Resources is based out of corporate headquarters in Atlanta, Georgia. This is an executive role with participation in leadership meetings. (Lynton Decl., ¶ 16).
- Cardlytics' Financial Controller is based out of corporate headquarters in Atlanta, Georgia. (Lynton Decl., ¶ 17).
- Cardlytics' Senior Vice President of Finance is based out of corporate headquarters in Atlanta, Georgia. (Lynton Decl., ¶ 18).
- Cardlytics' newly hired Chief Information Security Officer will be based out of corporate headquarters in Atlanta, Georgia. (Lynton Decl., ¶ 19).
- Cardlytics' Senior Director of Revenue Strategy is based out of corporate headquarters in Atlanta, Georgia. (Lynton Decl., ¶ 20).
- Cardlytics' Director of Corporate Development, Investor Relations and Communications is based out of corporate headquarters in Atlanta, Georgia. (Lynton Decl., ¶ 21).
- The majority of Cardlytics' employees who are not fully remote work in Cardlytics' corporate headquarters in Atlanta, Georgia. (Lynton Decl., ¶ 22).
- Cardlytics' annual stockholders meeting is hosted at its corporate headquarters in Atlanta, Georgia. The next stockholders meeting will be later this month in Atlanta, and Cardlytics' CEO and Chairman of the Board of the Board of Directors, among others, will be in attendance. (Lynton Decl., ¶ 23).
- Cardlytics identifies Atlanta, Georgia as its headquarters on all SEC filings and on its website. Cardlytics does this on a good faith basis since it maintains that its executive and core functions emanate from its headquarters in Atlanta, Georgia, which it considers its principal place of business. (Lynton Decl., ¶ 14).
- Cardlytics' next offsite executive team meeting is taking place in Atlanta, Georgia.

(Lynton Decl., ¶ 30).

Cardlytics' operation is indeed the typical situation outlined in *Hertz* where the corporate headquarters is the center of executive function and control. Cardlytics' claiming Atlanta as its corporate headquarters simply cannot be equated to one of those "rare instances" where claimed corporate offices are akin to a mailing address with no corporate activity.

### 2.  *Plaintiffs' Conclusory and Self-Serving Arguments Do Not Support A Contrary Result*

Plaintiffs' alleged factual support is presented as uncontested evidence, but is conclusory argument instead. (*See generally*, the Declaration of Lee Evans ("Evans Decl."), and Plaintiffs' Memorandum of Points And Authorities ("MPA")). More specifically, Plaintiff implies that Cardlytics is hiding the location of its CEO to secure jurisdiction, knowing that there is an alleged intentional transition of headquarters from Atlanta, Georgia to California, and the company's executive decision-making relates to product and sales only. This is far from accurate. First, Cardlytics readily concedes that its CEO is based out of California, but submits that the majority of executive policy and decision-making, and its headquarters and principal place of business remains in Atlanta. (*See* Lynton Decl. generally).

Second, Cardlytics also acknowledges that it is registered to do business in California (as well as New York, Illinois, and London), and has acquired several businesses in California with local offices to expand its presence here. (Lynton Decl., ¶ 8). However, expansion of business activity in a particular state is not the relevant inquiry for diversity jurisdiction. And while products and sales may be primary business activities of Cardlytics (i.e., Cardlytics considering itself to be "product driven"), they are not traditional core executive and administrative functions that the Supreme Court has deemed relevant to the "nerve center" analysis (e.g., finance and accounting). *See Hertz*, 559 U.S. at 97. As discussed, *supra*, the *Hertz* analyses focuses on Cardlytics' single place of business direction and control, not every location that the corporation conducts business, or acquires businesses with dealings in different states. Thus, assuming

*arguendo* that Plaintiffs' allegations are true, Plaintiffs essentially ask this Court to adopt the "business activities test" that the Supreme Court denounced in *Hertz*, instead of the appropriate "nerve center" analysis that favors one single location, typically headquarters absent rare circumstances, where the core functions and decision-making are done irrespective of business plurality. *Id.* Cardlytics' acquisition history is immaterial to the diversity analysis, and is yet another *red herring* in Plaintiffs' argument.

Third, Plaintiffs' characterization of Cardlytics' executive presence in California is overstated. For example, Bridg is only a subdivision within Cardlytics[5], and DOSH Holdings, LLC ("DOSH"), and HSP EPI Acquisition LLC ("Entertainment") are subsidiaries. Further, Plaintiffs were not involved in directing Cardlytics' high level corporate activities so their claimed knowledge about the direction of Cardlytics' corporate activities should be disregarded.[6] (Lynton Decl., ¶¶ 26-29). It is well-established that when reviewing diversity, subsidiaries are considered to have independent nerve centers. *China Basin Properties, Ltd. v. One Pass, Inc.*, 812 F.Supp. 1038, 1041 (N.D. Cal. Feb. 8, 1993) citing *Lurie v. Loew's San Francisco Hotel Corp.*, 315 F.Supp. 405, 410 (N.D. Cal. 1970). As such, the Court should not consider the purported places of business, principal or otherwise, for Entertainment, or Bridg when deciding Cardlytics' nerve center. Cardlytics' single principal place of business remains in Atlanta, Georgia.

Fourth, Plaintiffs support their argument by citing the fact that a variety of vice presidents and managers at Cardlytics live in California. But, that argument ignores the fact that vice president and managers generally do not have executive functions and thus they are unimportant for nerve center analyses. (Lynton Decl., ¶¶ 24-25). Also, Plaintiffs imply that various resignations of individuals in Atlanta has led to the transition of those

---

[5] Amit Gupta is the Chief Operating Officer of Bridg, a subdivision within Cardlytics.

[6] Entertainment was incorporated in Delaware, and its principal place of business is Troy, Michigan. (Lynton Decl., ¶ 28). Also, after the departure of Plaintiffs, the Cardlytics employee overseeing Entertainment is based in Atlanta and the Entertainment employee leading the business is based in Michigan.

positions to California, which it has not. For example, the head of human resources has always been based in Atlanta and will be moving forward, and Cardlytics' CFO, who is based out of Atlanta, is still working at Cardlytics (his planned resignation date is end of July) (*See* Evans Decl. ¶15 ; Lynton Decl., ¶¶10, 16).

Moreover, the cases in which Plaintiffs rely do not necessarily support their position, are distinguishable, and several of them, upon further examination, actually seem to support Cardlytics' position. For example, in *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09MD2087-BTM(AJB), 2010 WL 2998855, at *3 (S.D. Cal. July 29, 2010), the CEO of the removing defendant in the case was the sole director and decision-maker, and the alleged headquarters had no semblance of activity other than for mailing. Cardlytics's CEO is not the sole decision maker for the company, nor is its headquarters a mere mailing address, so this holding is factually distinguishable. Further, the *Hydroxycut* Court reviewed the totality of circumstances, taking into account the location of the defendant's accounting and finance operations to find the "nerve center." Thus, the Court did not rely on the presence of the CEO as dispositive, but instead looked to the totality of circumstances and the location of the core executive and administrative functions. Applying that reasoning to the facts here, notwithstanding the fact that Cardlytics' CEO is based out of California, Cardlytics' nerve center is Atlanta as that is where Cardlytics' finance and accounting operations, along with legal, and human resources, are based – not California.

Similarly, in *L'Garde, Inc. v. Raytheon Space and Airborne Systems*, 805 F. Supp. 2d 932, 940, the court looked to the totality of circumstances, in which the location of the CEO was only one factor, and relied heavily on the nationwide operations and control of human resources, information technology, and finance departments, and the defendant's Form 10-K to find the "nerve center", and all in spite of a non-majority of the executive officers being based out of that location. Once again, the location of Cardlytics' CEO supports Plaintiffs' position here, but every other factor that the Court weighed under the totality of circumstances in *L'Garde* supports Cardlytics' "nerve center" being Atlanta

(*See* Lynton Decl. ¶¶ 3, 7, 9-21)(Explaining that the majority of Cardlytics' executives reside and work in Atlanta; human resources, financial operations, legal operations, accounting, information technology, and the heads of these groups are all based out of Atlanta; and Cardlytics identifies Atlanta as its headquarters on all official corporate filings with the state and SEC).

This Court should similarly look at the totality of circumstances and come to the same effective conclusion – Cardlytics' "nerve center" is Atlanta.

### III. PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES MUST BE DENIED BECAUSE THERE IS COMPLETE DIVERSITY AND CARDLYTICS' REMOVAL WAS OBJECTIVELY REASONABLE

To award fees to a prevailing party on remand, the Court must find that the original removal lacked any "objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.) Removal is not objectively unreasonable solely because the removing party's arguments lack merit and the removal is ultimately unsuccessful. *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) (denying fees and costs despite noting there was "no question" that the defendant's arguments "were losers"). Even if the Court deems a defendant's removal arguments unpersuasive, fees are only authorized if the arguments asserted are "entirely frivolous." *Prado v. Dart Container Corp. of Cal.*, 373 F. Supp. D 1281, 1285 (N.D. Cal. 2019). Further, to award fees, a defendant's arguments for diversity jurisdiction must be clearly foreclosed. *Lussier*, 518 F.3d at 1065 (9th Cir. 2008) (Fees will not be awarded if the removal is based on reasonable arguments).

Here, there is no basis to conclude that Cardlytics' removal was made with the bad faith courts have found necessary to justify imposition of costs and fees. *See*, *e.g.*, *Concept Chaser Co., Inc. v. Pentel of Am. Ltd.*, 2011 WL 4964963 at *3 (C.D. Cal. Oct. 18, 2011); *Hornbuckle*, 385 F.3d, at 541; *Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290,

293 (C.A.5 2000). Plaintiffs' accusation that Cardlytics intentionally mislead the Court is not supported by the record, and is completely baseless. Plaintiff's reliance on *Rhodes v. Barnett*, 692 Fed. Appx. 834, 836, (9th Cir. 2017), is dramatically inapposite. In *Rhodes*, the court found that the removing defendants were aware at the time of removal that a corporate defendant was misnamed in the complaint, and instead of correcting the plaintiff's mistake, sought to take advantage of the mistake to establish diversity jurisdiction where none existed. *Id.* There is absolutely no indication of such blatant misconduct and clear foreclosure here to warrant fees. Further, Plaintiffs seem to characterize Cardlytics' pleading of the location of its corporate headquarters in the Notice of Removal with the support of its secretary of state filing as intentionally misleading. Again, this is unsupported by the factual record or the law. The standard to demonstrate diversity jurisdiction in a notice of removal is only one for pleading a short plain statement, not including all uncontroverted evidence. *Dart Cherokee Basin Operating Co.,* 135 S. Ct. at 554. While the *Hertz* Court indicated that identification of corporate address on a filing is not dispositive, that certainly does not make it irrelevant, especially when the corporate headquarters is typically one and the same as the "nerve center." *See Hertz*, 559 U.S. at 97.

Cardlytics maintains that its principal place of business and "nerve center" is its headquarters in Atlanta based on the plethora of evidence discussed above. (*See* Lynton Decl. ¶¶ 6-30). Accordingly, fees are not appropriate at the outset since there is original jurisdiction. *See Martin*, 546 U.S. at 141 ("Since the Court has decided that removal was proper, it follows that Defendants had an objectively reasonable basis for seeking removal"). Even assuming *arguendo* that the Court were to hold otherwise, Cardlytics – at a minimum – has an objective reasonable basis for seeking removal based on the aforementioned evidence. The record here simply does not support any award of fees regardless of outcome.[7]

---

[7] Plaintiffs are well aware of the corporate presence of Cardlytics in Atlanta, and of the

## IV. CONCLUSION

For the reasons set forth in this Opposition, the Court should deny Plaintiffs' Motion to Remand in its entirety and grant such other relief as the Court deems just and proper.

Dated: May 15, 2023

Respectfully submitted,

FISHER & PHILLIPS LLP

By: */s/ Brian L. Tremer*
ALDEN J. PARKER
BRIAN L. TREMER
Attorneys for Defendant
CARDLYTICS, INC

---

majority of the facts contained in the Declaration of Nick Lynton.  Pursuant to Plaintiffs' own theory for requesting fees – construing arguments as fact – they are arguably bringing their motion to remand in bad faith and therefore, if anything, Cardlytics should be entitled to fees -- not Plaintiffs.

# CERTIFICATE OF SERVICE

I, the undersigned, am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; am employed with the law offices of Fisher & Phillips LLP and my business address is 2050 Main Street, Suite 1000, Irvine, California 92614.

On the date below, I served the foregoing document entitled **DEFENDANT CARDLYTICS, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND** on all the appearing and/or interested parties in this action by placing ☐ *the original* ☒ *a true copy* thereof enclosed in sealed envelope(s) addressed as follows:

| | |
|---|---|
| CUMMINS & WHITE, LLP<br>Erick J. Becker, P.C.<br>Edward J. Farrell<br>Hwui Lee<br>2424 East Bristol Street, Ste. 300<br>Newport Beach, CA 92660-0764 | Attorneys for Plaintiffs<br>LEE EVANS and NICOLA EVANS<br><br>T: 949-852-1800<br>ebecker@cwlawyers.com<br>hlee@cwlawyers.com<br>efarrell@cwlawyers.com |

☒ **[by ELECTRONIC SUBMISSION]** - I served the above listed document(s) described via the United States District Court's Electronic Filing Program on the designated recipients via electronic transmission through the CM/ECF system on the Court's website. The Court's CM/ECF system will generate a Notice of Electronic Filing (NEF) to the filing party, the assigned judge, and any registered users in the case. The NEF will constitute service of the document(s). Registration as a CM/ECF user constitutes consent to electronic service through the court's transmission facilities.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed May 15, 2023 at Irvine, California.

| Elizabeth M. Abina | By: */s/ Elizabeth M. Abina* |
|---|---|
| Print Name | Signature |