O

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEE EVANS and NICOLA EVANS,<br><br>      Plaintiffs,<br><br>  v.<br><br>CARDLYTICS, INC., a Delaware corporation; and DOES 1-20, inclusive,<br><br>      Defendants. | Case No. 8:23-cv-00606-JWH-KES<br><br>**ORDER REGARDING PLAINTIFFS' MOTION TO REMAND AND REQUEST FOR ATTORNEYS' FEES [ECF No. 15]** |
| CARDLYTICS, INC., a Delaware corporation,<br><br>      Counterclaimant,<br><br>  v.<br><br>LEE EVANS and NICOLA EVANS,<br><br>      Counterdefendants. | |

## I.  SUMMARY OF DECISION

In the modern age of remote work and geographically dispersed corporations, the question arises:  where is the "principal place of business" for a company whose leadership cadre lives, works, and makes decisions far away from its corporate headquarters?  That question is now squarely before this Court.  Although telecommuting and working-from-home by employees have been corporate realities for more than a decade, the trend exploded following the COVID-19 pandemic and subsequent lockdowns requiring the physical closure of workplaces.  Despite efforts by some companies to bring their employees back to the office, the trend of remote work appears to be a permanent fixture of U.S. corporate life.[1]

Before the Court is the motion of Plaintiffs and Counterdefendants Lee Evans and Nicola Evans to remand this action to Orange County Superior Court and their concomitant request for attorneys' fees.[2]  Plaintiffs base their Motion on their allegation that the majority of the leadership team of Defendant and Counterclaimant Cardlytics, Inc. is located in California, even though the company lists its headquarters as located in Atlanta, Georgia.  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition,[3] for the reasons set forth herein the Court orders that the Motion is **GRANTED in part** and **DENIED in part**; specifically, this action is remanded to state court, but Plaintiffs receive no award of fees.

## II.  BACKGROUND

Plaintiffs are former employees of Cardlytics.  Lee Evans was the Chief Executive Officer of the Cardlytics-owned subsidiary HSP-EPI Acquisitions, LLC, and Nicola Evans was the Chief Operating Officer of that subsidiary.[4]  Plaintiffs were previously the owners and executives of Afin Technologies, Inc.—a company that Cardlytics purchased in early 2022.  As part of the consideration for that purchase, Plaintiffs agreed to continue

---

[1]  *See* Sarah Cambon & Andrew Mollica, *Remote Work Sticks for All Kinds of Jobs*, WALL STREET JOURNAL (July 4, 2023), https://www.wsj.com/articles/remote-work-sticks-for-all-kinds-of-jobs-db9786ee.

[2]  Pls.' Mot. to Remand & Request for Att'ys' Fees (the "Motion") [ECF No. 15].

[3]  The Court considered the documents of record in this action, including the following papers:  (1) Notice of Removal (and attachments) [ECF No. 1]; (2) Motion (including its attachments); (3) Def.'s Opp'n to the Motion (the "Opposition") [ECF No. 20]; and (4) Pls.' Reply in Supp. of the Motion (the "Reply") [ECF No. 23].

[4]  Complaint ¶ 6.

their employment with Cardlytics for at least four years.[5]  Both Plaintiffs are residents of Orange County, California.[6]

Cardlytics is incorporated in Delaware, and it contends that its headquarters is located in Atlanta, Georgia.[7]  Cardlytics claims that—"not unlike many modern companies"—it conducts business and has offices nationally and internationally.[8]  In September 2022, Cardlytics appointed as its new CEO non-party Karim Temsamani, who immediately began to cut costs at the company.[9]  Plaintiffs allege that in the following months, Cardlytics unlawfully orchestrated a scheme to terminate Plaintiffs' employment, and in January 2023 Temsamani fired them.[10]

Plaintiffs filed the instant action in Orange County Superior Court in February 2023, asserting the following seven claims for relief:

- breach of contract;
- breach of implied covenant of good faith and fair dealing;
- retaliation in violation of Cal. Labor Code § 1102.5;
- retaliation in violation of Cal. Labor Code § 98.6;
- wrongful termination in violation of public policy;
- failure to pay wages due upon termination in violation of Cal. Labor Code §§ 201 & 202; and
- failure to reimburse business expenses in violation of Cal. Labor Code § 2802.[11]

Cardlytics removed the action to this Court in April 2023, and Plaintiffs filed the instant Motion to remand in May 2023.

### III.  LEGAL STANDARD

Federal courts are courts of limited jurisdiction.  Accordingly, "[t]hey possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  In every federal case, the basis for federal jurisdiction must

---

[5]  *Id.*

[6]  *Id.* at ¶ 1.

[7]  Opposition 1:5-9.

[8]  *Id.* at 1:12-14.

[9]  Complaint ¶ 12.

[10]  *Id.* at ¶ 16.

[11]  Notice of Removal ¶ 3.

appear affirmatively from the record. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). "The right of removal is entirely a creature of statute and a suit commenced in a state court must remain there until cause is shown for its transfer under some act of Congress." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002) (internal quotation marks omitted). Where Congress has acted to create a right of removal, those statutes, unless otherwise stated, are strictly construed against removal jurisdiction. *See id.*

To remove an action to federal court under 28 U.S.C. § 1441, the removing defendant "must demonstrate that original subject-matter jurisdiction lies in the federal courts." *Syngenta*, 537 U.S. at 33. As such, a defendant may remove a civil action in which either (1) a federal question exists; or (2) complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331 & 1332. "Complete diversity" means that "each defendant must be a citizen of a different state from each plaintiff." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1234 (9th Cir. 2008).

The right to remove is not absolute, even when original jurisdiction exists. In particular, the removing defendant bears the burden of establishing that removal is proper. *See Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (noting the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant"); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("[t]he strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper" (quotation marks omitted)). Any doubts regarding the existence of subject matter jurisdiction must be resolved in favor of remand. *See id.* ("[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance").

If the district court determines that removal was improper, then the court may also award to the plaintiff the costs and attorney fees that it incurred in response to the defendant's removal. *See* 28 U.S.C. § 1447(c). The court has broad discretion to award costs and fees whenever it finds that removal was wrong as a matter of law. *See Balcorta v. Twentieth-Century Fox Film Corp.*, 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

## IV.  ANALYSIS

### A.  Diversity of Citizenship

Plaintiffs allege that Cardlytics's principal place of business is not in Atlanta, where the company is headquartered, but, instead, it is in California, where the majority of Cardlytics's corporate officers reside. For diversity purposes, a corporation is deemed

to be a citizen of both the state in which it is incorporated and the state where it has its principal place of business. *See Breitman v. May Co. California*, 37 F.3d 562, 564 (9th Cir. 1994) (citing 28 U.S.C. § 1332(c)).

A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). The Supreme Court also characterizes that location as the "nerve center":

> [I]n practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

*Id.* at 93. Additionally, "[a] corporation's 'nerve center' . . . is a *single* place." *3123 SMB LLC v. Horn*, 880 F.3d 461, 469 (9th Cir. 2018) (citing *Hertz*, 559 U.S. at 93) (emphasis in original).

Of particular relevance to the instant action, the Supreme Court recognizes that "there will be hard cases" and that "in this era of telecommuting, some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet." *Hertz*, 559 U.S. at 95-96.

The task that now falls on this Court is to determine where Cardlytics's "nerve center" is located, or, more accurately, whether Cardlytics has met its burden of proof for removal. *See id.* at 96 ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it."). "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Id.* at 96-97 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

In both Plaintiffs' Motion and Cardlytics's Opposition, the parties bombarded the Court with drawn-out and bulleted lists of Cardlytics's corporate officers residing either in California or Atlanta.[12] Neither party provided a framework to compare the Atlanta-based officers against those residing elsewhere, and neither assigned particularized weight to individual positions regarding their relevance to Cardlytics's "nerve center." Instead, the parties left it to the Court to tally various corporate positions and activities and to guess whether Cardlytics's Vice President of Product residing in California outweighs the

---

[12]   *Compare* Motion 10:13-11:23, *with* Opposition 7:4-28.

Senior Director of Revenue Strategy residing in Atlanta.[13]  To paraphrase the Supreme Court, the competing corporate positions before the Court are insusceptible to resolution by reference to any juridical principle.  *See Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142, 1160 (2023) ("[T]he task is like being asked to decide 'whether a particular line is longer than a particular rock is heavy.'") (citing *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888, 897 (1988) (Scalia, J., concurring in judgment)).

Cardlytics rests much of its Opposition on the fact that many of the corporate officers designated for purposes of Section 16 disclosures—referring to a rule within the Securities Exchange Act of 1934 governing regulatory filing responsibilities—reside in Atlanta.[14]  The Supreme Court, however, has explicitly rejected corporate filings as sufficient proof of a corporation's "nerve center."  *See Hertz*, 559 U.S. at 97 (rejecting SEC form 10-K listings of "principal executive offices" as adequate proof of a corporation's "nerve center").  Cardlytics's argument that it identified Atlanta as its headquarters on all of its SEC filings is similarly insufficient, as is the fact that Cardlytics conducts its annual stockholders meeting in Atlanta.  *See id.* at 93 (rejecting the travel of corporate officers to board meetings as adequate evidence of a corporation's "nerve center").

Instead, when evaluating diversity jurisdiction, courts are directed to analyze whether a corporation's headquarters is "the place of actual direction, control, and coordination[.]"  *Id.* at 97.  In their unopposed request for judicial notice, Plaintiffs submitted evidence of Cardlytics's website listing its "Leadership Team," along with press releases, regulatory filings, and LinkedIn posts of Cardlytics's corporate officers.[15]

---

[13]      *Compare* Motion 10:26-27, *with* Opposition 7:13-14.

[14]      Opposition 6:13-16.

[15]      *See* Pls.' Request for Judicial Notice (the "RJN") [ECF No. 16].  Cardlytics did not oppose Plaintiffs' RJN.  In deciding a motion to dismiss, courts generally look only to the face of the complaint and documents attached thereto.  *See Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir.2002).  The Court may consider, however, materials that are subject to judicial notice under Rule 201 of the Federal Rules of Evidence.  *See Gerritsen v. Warner Bros. Entertainment, Inc.*, 112 F. Supp. 3d 1101, 1020 (C.D. Cal. 2015).  Rule 201 permits the Court to take judicial notice of facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Here, Plaintiffs provided photographs of Cardlytics's website displaying its "Leadership Team" and discussed the corporate duties of those officers.  Plaintiffs also submitted press releases, regulatory filings, and LinkedIn posts of Cardlytics's corporate officers.  Because those materials are not subject to reasonable dispute, the RJN is **GRANTED**.

-6-

Cardlytics's Leadership team consists of seven officers, the following of whom are residents of California:[16]

- Karim Temsamani, CEO;
- Amit Gupta, COO;
- Peter Chan, Chief Technology Officer; and
- Jose Singer, Chief Product Officer.

Conversely, Cardlytics submits that only two of the Leadership Team's officers reside in Atlanta: (1) Andry Christiansen, Chief Financial Officer; and (2) Nick Lynton, Chief Legal & Privacy Officer.[17] Although simple math shows that the majority of Cardlytics's Leadership Team is in California, and not Atlanta, the Court's analysis is also guided by the positions of the corporate officers. Temsamani, as CEO, wields more authority than any other officer within Cardlytics, while Gupta, as COO, is essentially Cardlytics's second-in-command.[18] To extend *Hertz's* analogy of the "nerve center" test, if a corporation's principal place of business is its "brain," then the CEO and COO are akin to the prefrontal cortex and hippocampus; *i.e.*, the parts most responsible for decision-making. *See P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1098, 1110 (C.D. Cal. 2015) ("The hippocampus is a brain structure in the limbic system and plays an essential role in new learning and memory formation"; similarly, "[t]he prefrontal cortex is a lobe in the front of the brain that plays an important role in regulating the complex cognitive, emotional, and behavioral functioning of humans." (citations omitted)).

Looking to Cardlytics's Leadership Team, the Court must weigh the facts that the parties have adduced in determining whether Cardlytics has met its burden of proof for establishing the existence of diversity jurisdiction. *See L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 940 (C.D. Cal. 2011) ("California district courts have found that reliance on a single piece of evidence . . . is insufficient for a party to prove the location of its headquarters under the nerve center test."). Here, both the numbers and decision-making authority of Cardlytics's California-based Leadership Team outweighs that of the Atlanta-based officers. Although the Court need not address whether Cardlytics's "nerve center" should be properly characterized as located in California, based upon the factual record available here, the Court finds that Cardlytics has failed to

---

[16]   Motion 10:13-25 & 11:22-23.

[17]   Opposition 6:13-16.

[18]   *See Chief Executive Officer*, *Merriam-Webster's Dictionary*, https://www.merriam-webster.com/dictionary/CEO (last accessed November 7, 2023) ("[T]he executive with the chief decision-making authority in an organization or business[.]"); *Chief Operating Officer*, *Investopedia*, https://www.investopedia.com/terms/c/coo.asp (last accessed November 7, 2023) ("The COO typically reports directly to the [CEO] and is considered to be second in the chain of command.").

sustain its burden. *See Abrego*, 443 F.3d at 684 ("More generally, [i]t is to be presumed that a cause lies outside [the] limited jurisdiction [of the federal courts] and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (citing *Kokkonen*, 511 U.S. at 377). Accordingly, Plaintiffs' Motion is **GRANTED**, and the action is **REMANDED**. This Court will leave it to the state court to address Plaintiffs' pending motion to dismiss Cardlytics's counterclaims;[19] that motion is **DENIED without prejudice**.

### B. Attorneys' Fees

Next, Plaintiffs seek attorneys' fees under 28 U.S.C. § 1447(c), which states that "[a]n order remanding a removed case to state court 'may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.'" *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 134 (2005) (citing 28 U.S.C. § 1447(c)). "[T]he word 'may' clearly connotes discretion," and "[t]he automatic awarding of attorney's fees to the prevailing party would pretermit the exercise of that discretion." *Id.* at 136 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)). Further, "the standard for awarding fees should turn on the reasonableness of the removal." *Id.* at 141.

Attorneys' fees here are unwarranted because the question of remand was a closely contested legal issue. Cardlytics's removal was not unreasonable, and, if anything, the Court's decision to remand is a function of evolving corporate practices and the dispersion of workforces through remote work. Cardlytics did not aver in bad faith that its headquarters was located in Atlanta, and it provided reasonable evidence in support of its contention that Atlanta was Cardlytics's "nerve center." Although Plaintiffs ultimately had the better of the argument, because Cardlytics had "an objectively reasonable basis [for removal], fees should be denied." *Id.* As such, Plaintiffs' motion for attorneys' fees is **DENIED**.

### V. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Plaintiffs' Motion to remand is **GRANTED**, but their request for an award of costs and attorneys' fees is **DENIED**.

---

[19] *See* Pls.' Mot. to Strike Affirmative Defenses & Dismiss Countercls. Pursuant to Rule 12(b)(6) (the "Motion to Dismiss Counterclaims") [ECF No. 13].

    2.    Plaintiffs' Motion to Dismiss Counterclaims is **DENIED without prejudice**.

    3.    This case is **REMANDED** to Orange County Superior Court.

**IT IS SO ORDERED.**

Dated: November 7, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE